IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| WILLIAM DARRELL PETREY, | : | Case No. 1:25-cv-431 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| DAVID MILENDER, ESQ., | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First

Amended Complaint (Doc. 20) and Plaintiff's Amended Motion for Leave to File Sur-

Reply (Doc. 28). Plaintiff filed a Response in Opposition (Doc. 22) to Defendant's Motion

to Dismiss, to which Defendant filed a Reply in Support (Doc. 24). Plaintiff then filed a

Motion for Leave to File Sur-Reply (Doc. 28), to which Defendant did not respond. Thus,

this matter is ripe for the Court's review. For the following reasons, Plaintiff's Amended

Motion for Leave to File Sur-Reply (Doc. 28) is **DENIED** and Defendant's Motion to

Dismiss (Doc. 20) is **GRANTED**.

## ALLEGED FACTS

Plaintiff William Petrey, proceeding pro se, brings this action to seek redress for

constitutional violations from Defendant David Milender, Esq., Assistant Prosecutor in

Clinton County, Ohio. (First Am. Compl., Doc. 5, ¶¶ 1, 3.) The actions leading to this

lawsuit began with the deaths of Casey Pitzer and Marvin "Andy" Napier. (*Id.* at ¶ 6.)

Plaintiff states that he is the "duly appointed Marsy's Law victim representative," for both Pitzer and Napier, and that he has power of attorney for Greg Pitzer, father of Pitzer, and Ashten Turner, son of Pitzer. (*Id.* at ¶ 2.) Plaintiff's allegations begin with a public records request he made in 2023 regarding Pitzer's case. (*Id.* at ¶ 10.) According to Plaintiff, Defendant denied the request on September 29, 2023. (*Id.*) This denial was based on several valid statutory exemptions under Ohio Revised Code § 149.43, namely, the attorney-client privilege and work-product doctrine. (*Id.*) But, Plaintiff alleges that the denial letter did not disclose that the Clinton County Prosecuting Attorney, Brian Shidaker, publicly confirmed that all prosecutorial records concerning Pitzer's case prior to 2022 were missing from the prosecutor's office. (*Id.*) Plaintiff claims that the alleged concealment or loss of these records raises tampering concerns under Ohio Revised Code § 2913.42. (*Id.* at ¶ 11.) He also alleges that Defendant failed to recognize Plaintiff's status as a Marsy's Law representative and made no effort to provide access to records. (*Id.*)

Months later, on November 15, 2023, Plaintiff and Greg Pitzer, acting in their capacity as Marsy's Law representatives, visited the Clinton County Coroner's Office to "verify the completeness of the coroner's file" on Pitzer by comparing it with previously obtained documents. (First Am. Compl., Doc. 5, ¶ 7.) During their visit, the Coroner Investigator Gary Garrison called Defendant, who instructed Garrison to call the police. (*Id.* at ¶ 8.) According to Plaintiff, Defendant only demanded law enforcement involvement after becoming aware that the requested records had been retrieved and were available at the Coroner's Office. (*Id.* at ¶ 9.)

2

Following this interaction, on November 17, 2023, during a court hearing involving Greg Pitzer, where both Defendant and Plaintiff were present, the bailiff invited Plaintiff to sit with Mr. Pitzer. (First Am. Compl., Doc. 5, ¶ 12.) Plaintiff alleges that he informed the judge that he was not an attorney, yet the judge allowed him to assist Mr. Pitzer anyway. (*Id.*) Plaintiff claims that, after this hearing, Defendant filed an "exaggerated disciplinary complaint" against Plaintiff with the Supreme Court Disciplinary Counsel, arguing that Plaintiff was representing Mr. Pitzer, which constituted the unauthorized practice of law. (*Id.* at ¶ 13.) Finally, Plaintiff alleges that, on November 20, 2023, Plaintiff emailed Defendant a report that detailed "serious crimes, misconduct, and evidentiary links," regarding the "suspicious deaths" of Pitzer and Napier. (*Id.* at ¶ 6.) Plaintiff demanded prosecutorial review, referrals to agencies, and preservation of evidence, but Defendant did not respond to this report or the demands therein. (*Id.*)

## PROCEDURAL POSTURE

Plaintiff first filed his Complaint in the Warren County Court of Common Pleas on May 6, 2025, but Defendant removed the case to this Court on June 25, 2025. (*See* Notice of Removal, Doc. 1.) Plaintiff filed his First Amended Complaint on June 27, 2025. (*See* First Am. Compl., Doc. 5.) In his First Amended Complaint, Plaintiff brings the following claims against Defendant: (1) malicious prosecution; (2) abuse of process; (3) civil rights violation under 42 U.S.C. § 1983; (4) violation of Marsy's Law; (5) retaliation under 42 U.S.C. § 1983; (6) abuse of process for the coroner incident; and (7) violation of Marsy's Law (continued). (First Am. Compl., Doc. 5.) On October 17, 2025, Defendant filed a

3

Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 20). The Motion has been fully briefed. (*See* Docs. 22, 24.) After Defendant filed his Reply, Plaintiff filed a Motion for Leave to File Sur-Reply, attaching a proposed sur-reply to the Motion. (*See* Doc. 27.) Plaintiff then filed an Amended Motion for Leave to File Sur-Reply, which also included a proposed sur-reply as an attachment; Plaintiff represents that the Amended Motion and proposed sur-reply are substantively the same as the original, but the amended version of the sur-reply includes verification under 28 U.S.C. § 1746. (*See* Am. Motion for Leave, Doc. 28; *see also* Am. Proposed Sur-Reply, Doc. 28-1, Pg. ID 766.) The Court thus finds that the first Motion for Leave to File Sur-Reply is moot and will only consider the Amended Motion. Defendant did not reply to either of these motions, and the time to do so has passed. Thus, all matters are now ripe for the Court's review.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

## ANALYSIS

As a preliminary matter, the Court addresses Plaintiff's Amended Motion for Leave to File Sur-Reply (Doc. 28). Plaintiff claims that sur-reply is warranted because Defendant's Response in Opposition to his Motion for Leave to File Supplemental Pleading raises new arguments not previously raised in Defendant's Motion to Dismiss. (Am. Motion, Doc. 28, Pg. ID 761.) Specifically, Plaintiff states that Defendant's Response in Opposition (Doc. 26) brings new arguments "regarding relevance and scope, introduces new factual assertions concerning "non-party" evidence, and mischaracterizes and minimizes Plaintiff's repeated requests" for documents. (Am. Motion, Doc. 28, Pg. ID 759-60.) According to Plaintiff, these issues were not addressed in any prior briefing, and so they require clarification under Federal Rule of Civil Procedure 15(d). (*Id.* at Pg. ID 760.)

While Plaintiff cites Rule 15 as grounds for allowing his sur-reply, the Court notes that this is not the proper rule under which to bring the Motion. Rule 15 governs supplemental pleadings, and specifically, Rule 15(d) allows a supplemental pleading to include any "transaction, occurrence, or event that happened after the date of the pleading." Fed. R. Civ. P. 15(d). To this extent, Plaintiff already filed a Motion for Leave to File Supplemental Pleading (Doc. 25), which this Court denied. (*See* Order, Doc. 34.)

The Local Rules, meanwhile, address supplemental briefing and prohibit "additional memoranda beyond those enumerated . . . except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). While the Local Rules do not define good cause, "this Court has consistently held that in order for a party to be given permission

to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010) (citations omitted). The Local Civil Rules also provide that "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." S.D. Ohio Civ. R. 7.2(d). "[G]ood cause also exists where a party seeks to clarify misstatements contained in the reply brief." *McAfee v. DataX, Ltd.*, 812 F. Supp. 3d 792, 797 (S.D. Ohio 2025) (quoting *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F. Supp. 3d 737, 744 (S.D. Ohio 2022) (cleaned up)).

Plaintiff, however, seeks to file a sur-reply because arguments Defendant made in his Response in Opposition to Plaintiff's Motion for Leave to File Supplemental Pleading are not raised in Defendant's Motion to Dismiss. (*See* Am. Motion, Doc. 28; Proposed Sur-Reply, Doc. 28-1.) But, this argument fails. The relevant inquiry here is whether Defendant raised new arguments for the first time in his Reply in Support of his Motion to Dismiss (Doc. 24). Plaintiff's sur-reply, meanwhile, seeks to address Defendant's arguments in his Motion to Dismiss based on "new arguments" Defendant made in an unrelated Response in Opposition. The Court, therefore, does not find that good cause for a sur-reply exists. *See* S.D. Ohio Civ. R. 7.2(d); *see also Comtide Holdings*, 2010 WL 4117552, at *4.

\*     \*     \*

Having determined that leave for a sur-reply is not warranted, the Court now moves on to the merits of the Motion to Dismiss. Defendant argues that Plaintiff fails to

6

state a claim upon which relief can be granted for each of his eight claims. The Court will address each claim in turn.

### a. Prosecution-Based Claims (Counts III, IV, and VII)

Defendant begins his discussion by arguing that absolute immunity bars Plaintiff's claims that relate to Defendant's prosecutorial actions. (Motion, Doc. 20, Pg. ID 307.) Specifically, Defendant points to Count III, violation of civil rights under § 1983, and Counts IV and VIII, violations of Marsy's Law, as conduct for which he is entitled to absolute immunity. (*Id.* at Pg. ID 308.) Essentially, Defendant claims absolute immunity for the decisions he made when exercising prosecutorial discretion. (*Id.*)

Prosecutors are entitled to absolute immunity from civil lawsuits for any acts "undertaken in direct preparation of judicial proceedings," while "other acts, such as gathering of evidence that may ripen into prosecution, are too attenuated to the judicial process to afford absolute protection." *Ireland v. Tunis,* 113 F.3d 1435, 1440 (6th Cir. 1997). Thus, in order to categorize a prosecutor's conduct, the "critical inquiry" is "how closely related the prosecutor's challenged activity is to his role as an advocate." *Adams v. Hanson,* 656 F.3d 397, 403 (6th Cir. 2011) (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (cleaned up)). Put differently, the "analytical key to prosecutorial immunity, therefore, is advocacy—whether the actions in question are those of an advocate." *Holloway,* 220 F.3d at 775. That said, "investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity." *Ireland,* 113 F.3d at 1445. And, the Supreme Court has held that a prosecutor is entitled to absolute immunity even when performing administrative

7

activities, if the act is done as part of the prosecutor's advocacy. *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). These administrative duties, though, must be "directly connected" with the prosecutor's basic trial advocacy duties and "require legal knowledge and exercise of related discretion." *Id.* at 344. With this framework in mind, the Court turns to Defendant's alleged misconduct.

In the First Amended Complaint, Plaintiff asserts that Defendant refused to consider or take prosecutorial action on the report he sent that detailed evidence about Pitzer and Napier's "suspicious deaths." (First Am. Compl., Doc. 5, ¶ 6.) Additionally, Plaintiff claims that Defendant denied him a public records request, invoking statutory exemptions under Ohio Revised Code § 149.43. (*Id.* at ¶ 10.) Plaintiff states that this denial constituted a failure to recognize his rights as a Marsy's Law representative. (*Id.* at ¶ 11.) In light of those allegations, Plaintiff brings claims of a violation of § 1983 for Defendant's "selective enforcement" of the law, along with violations of Marsy's Law for denial and obstruction of records. (*Id.* at ¶¶ 19-22, 27.) Defendant argues that these actions fall within the scope of his advocacy duties, and thus the associated claims are protected by absolute immunity. (Motion, Doc. 20, Pg. ID 308.) Plaintiff, meanwhile, disagrees and states that he challenges non-advocacy conduct, including Defendant's actions at the coroner's office, his filing of a civil stalking protective order against Plaintiff, and his initiation of an Ohio Supreme Court disciplinary complaint. (Response, Doc. 22, Pg. ID 338-39.) According to Plaintiff, these actions are not intimately associated with the judicial process and absolute immunity should not apply. (*Id.* at Pg. ID 339.)

8

The Court agrees that these actions are not advocacy-based, and in fact, so does Defendant himself. (*See* Reply, Doc. 24, Pg. ID 658.) As Defendant points out, he seeks absolute immunity not for these actions, but for his prosecutorial discretion in denying records requests, declining to respond to Plaintiff's evidentiary report, and engaging in "selective enforcement." (*Id.*) In other words, Defendant contends that he is entitled to absolute immunity "only for decisions made in his role as an assistant prosecutor." (*Id.* at Pg. ID 659.)

Examining the allegations in a light most favorable to Plaintiff, while still considering Defendant's role as a prosecutor, the Court agrees with Defendant that his decisions regarding consideration of Plaintiff's evidence required Defendant to have legal knowledge and to exercise his discretion; absolute immunity, therefore, bars Plaintiff's claims as they apply to these activities. *See Van de Kamp*, 555 U.S. at 344; *see also Imbler v. Pachtman*, 424 U.S. 409, 413 (1976) (prosecutors entitled to absolute immunity when accused of suppressing material evidence); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutors entitled to absolute immunity for conduct related to evaluating evidence). However, the Court disagrees that his denial of a public records request constitutes judicial activities for purposes of absolute immunity. *See Jackson v. City of Cleveland*, 64 F.4th 736, 744 (6th Cir. 2023) (finding that denial of public records request was solely an administrative task "not closely related to an advocate's preparation for the initiation of prosecution"). The Court thus proceeds to further analysis on this portion of the claims.

### b. 42 U.S.C. § 1983 Civil Rights Claim (Count III)

Nevertheless, Defendant contends that Count III, Plaintiff's § 1983 civil rights claim, fails in its entirety as a matter of law. (Motion, Doc. 20, Pg. ID 309.) To state a claim for relief under § 1983, a plaintiff must allege that (1) the defendant acted under color of law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Plaintiff brings his § 1983 claim under the First and Fourteenth Amendments, alleging that Defendant violated his rights to freedom of speech, association, and petition. (First Am. Compl., Doc. 5, ¶¶ 19-20.) Defendant argues that he violated none of these rights. (Motion, Doc. 20, Pg. ID 309.)

Beginning with Plaintiff's free speech claim, Defendant states that Plaintiff fails to satisfy the test for such a violation. (Motion, Doc. 20, Pg. ID 309.) A free speech claim has a three-part inquiry: (1) whether the speech at issue is afforded constitutional protection; (2) in what forum the speech was made; and (3) whether the government's action in shutting off the speech was legitimate, in light of the applicable standard of review. *Blankenship v. Louisville-Jefferson Cnty., Ky Metro Gov't*, 162 F.4th 644, 653 (6th Cir. 2025). Defendant contends that Plaintiff's claim fails for three reasons, all rooted in the Complaint's failure to name the allegedly stilted speech. (Motion, Doc. 20, Pg. ID 309.) Indeed, to start, Defendant argues that "it is entirely unclear to which speech" Plaintiff refers in the Complaint. (*Id.*) Accordingly, it is impossible to determine if that speech is protected. (*Id.*) Second, because of this lack of clarity, "the nature of the forum remains unclear." (*Id.*) And, finally, again because the speech is unknown, "there is no way to know if the government's restriction on speech (if there even was one) satisfied the

10

relevant forum's associated constitutional standard." (*Id.* at Pg. ID 310.) In his Response, Plaintiff does not address these arguments at all. (*See generally* Response, Doc. 22.) Viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Court agrees that Plaintiff fails to allege a § 1983 violation of his right to free speech. Dismissal of this portion of the claim is proper.

Moving on to Plaintiff's freedom of association claim, Defendant again argues that the Complaint fails to state this claim. (Motion, Doc. 20, Pg. ID 310.) While the freedom of association is not an explicit right in the Constitution, "[t]he Supreme Court has tied the freedom of assembly to the broad right of expressive association." *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785, 826 (E.D. Mich. 2021). "[T]he Court recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (cleaned up). But, as Defendant argues, Plaintiff "has failed to present any facts in support of a freedom of association claim." (Motion, Doc. 20, Pg. ID 310.) He has not claimed that he is a part of a group entitled to protection, nor that any government actor has burdened that group's expression. (*Id.* at Pg. ID 311.) Furthermore, Defendant points out that a claim for freedom of intimate association also fails, as Plaintiff has not claimed any personal relationships that qualify for this constitutional protection. (*Id.* (citing *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 598 (6th Cir. 2013)).) Once again, Plaintiff's Response does not address this deficiency. (*See generally* Response, Doc. 22.) And, in its reading of the Complaint, viewing all allegations in the light most favorable to Plaintiff,

11

the Court agrees with Defendant that Plaintiff fails to plausibly allege a violation of his right to freedom of association. This portion of the § 1983 civil rights claim also falls.

Finally, Defendant argues that Plaintiff has failed to state a claim for a violation of his freedom to petition. (Motion, Doc. 20, Pg. ID 312.) To state a claim under this constitutional right, a plaintiff must show that: (1) he engaged in the protected conduct of petitioning the government for a redress of grievances; (2) the defendant took an adverse action against him; and (3) a causal connection exists between the two. *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). Defendant again states that Plaintiff does not allege that he engaged in this protected activity. (Motion, Doc. 20, Pg. ID 312.) And, Defendant argues that the adverse action taken is unclear; it could have been the denial of the public records request, the direction to the coroner to call the police, or the disciplinary complaint. (*Id.*) According to Defendant, Plaintiff "has not pled with any specificity the facts that gave rise to this cause of action." (*Id.*) Plaintiff, again, does not directly address this argument or seek to clarify his pleadings. (*See generally* Response, Doc. 22.) And, by the Court's reading of the Complaint, no allegations show any petition of grievance by Plaintiff. Accordingly, the Court agrees with Defendant that Plaintiff has failed to state a § 1983 claim for violation of his right to petition. Considering all three claims Plaintiff made in Count III, the Court finds that none of them survive. Count III is thus dismissed in its entirety.

### c.   42 U.S.C. § 1983 Retaliation Claim (Count V)

Plaintiff pleads a second § 1983 claim for Defendant's retaliation against Plaintiff's exercise of his First Amendment rights. A First Amendment retaliation claim under §

12

1983 requires Plaintiff to show: (1) he engaged in protected activity; (2) Defendant took an adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. *Sullivan v. Ohio State Univ.*, 764 F. Supp. 3d 652, 661 (S.D. Ohio 2025). Here, Defendant acknowledges that Plaintiff's Complaint alleges protected activity. (Motion, Doc. 20, Pg. ID 313.) Namely, the Complaint states that he reported misconduct, made public records requests, and performed courtroom assistance with judicial approval. (*Id.*; *see also* First Am. Compl., Doc. 5, ¶ 23.) Plaintiff then alleges that Defendant "engaged in intimidation tactics," such as calling the police, filing a disciplinary complaint, and filing a civil stalking protective order, and that these tactics were motivated by retaliation and chilled his conduct. (First Am. Compl., Doc. 5, Pg. ID 313.)

Nevertheless, Defendant argues that these claims fail because "the controlling issue is whether an official possessed state authority to take the action and whether they purported to act under that authority on the specific occasion." (Motion, Doc. 20, Pg. ID 313 (quoting *Hernden v. Chippewa Valley Sch. Dist.*, No. 24-1842, 2025 WL 2652993, at *5 (6th Cir. Sept. 16, 2025)) (cleaned up).) Defendant notes that the three alleged actions—directing the coroner to call the police, filing a disciplinary action, and filing a civil stalking protective order—cannot be attributable to the state. (*Id.* at Pg. ID 313-14.) Defendant argues that Plaintiff does not allege that Defendant was acting in his role as assistant prosecutor when he committed these three acts. (*Id.*) Plaintiff responds, though, by arguing that Defendant used his authority as prosecutor to instruct the coroner to withhold records and call the police. (Response, Doc. 22, Pg. ID 340.) And, the civil

13

stalking protective order was rooted in Plaintiff's interactions with Defendant's "official email and criticism of his public handling of homicide cases." (*Id.*) Additionally, Plaintiff argues that all three elements of a First Amendment retaliation claim are met and reiterates what the protected conduct and adverse actions were, and that they are clearly linked. (*Id.* at Pg. ID 341-42.) Finally, Plaintiff states that Defendant benefited from and coordinated with his former office as it currently withholds 334 Defendant-related emails from Plaintiff. (*Id.*)

To this last point, Defendant notes that this allegation related to the 334 emails is completely absent from Plaintiff's First Amended Complaint and, accordingly, he cannot bring these claims via his Response. (Reply, Doc. 24, Pg. ID 667-68 (collecting cases).) The Court agrees and will not consider this last point as part of Plaintiff's retaliation claim. *See Harris v. City of Cleveland Bd. of Educ.*, No. 1:17-CV-121, 2018 WL 1144961, at *5 (E.D. Tenn. Mar. 1, 2018) ("It is well-settled that a plaintiff cannot add new claims to [his] complaint in opposition to a motion to dismiss.").

Moving on, Defendant argues that, if the Court does consider his instruction to the coroner to call the police an action, it does not amount to "state action," despite the fact that, for the first time in his Response, Plaintiff says that Defendant was acting "in his official capacity as an assistant prosecutor." (Reply, Doc. 24, Pg. ID 660.) Furthermore, Plaintiff does not allege how Defendant, as assistant prosecutor, had the authority to order staff of the Coroner's Office to call the police. (*Id.* at n.2.) As Defendant puts it, Plaintiff has not alleged that Defendant represented the Coroner's Office in any way. (*Id.*) And, Defendant argues that, assuming Plaintiff could meet the first two prongs of the

14

retaliation claim, he did not adequately plead that the "protected conduct was a substantial motivating factor in the adverse decision." (*Id.* at Pg. ID 661 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 334 (6th Cir. 2010)).) Put simply, Defendant contends that Plaintiff "fails to draw the necessary causal link between his submission of evidence and [Defendant]'s conduct." (*Id.*) Examining the allegations, the Court agrees that Plaintiff fails to allege that Defendant directing the coroner to call the police constitutes state action. *See Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (police officer did not engage in state action when she called 911 on suspect who was at her residence at night); *see also Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) ("[A] state employee's conduct will meet the test if a state regulation tasked the employee with engaging in the specific conduct at issue."). Plaintiff points to no regulation that gives Defendant this authority as prosecutor. And, to the extent that Plaintiff attempts to cure this defect by stating in his Response that Defendant was acting in his official capacity, Plaintiff's statement is absent of any further explanation beyond this bald assertion. The Court thus finds that Plaintiff fails to plead a retaliation claim for this action.

Plaintiff's other allegations of retaliation fail for the same reason. Defendant again argues in his Reply that filing the complaint and the civil stalking protective order do not constitute state action. (Reply, Doc. 24, Pg. ID 662.) First, Plaintiff himself admits in the Response that the civil stalking protective order was "filed through private counsel […] in Defendant's personal capacity," and that "[t]his was a personal civil action, not a prosecutorial act." (*Id.* (quoting Response, Doc. 22, Pg. ID 339).) The same is true for the

15

disciplinary complaint, where Defendant points out that Plaintiff admitted that Defendant's action "was petitioning a regulatory body, not presenting the state's case." (*Id.* (quoting Response, Doc. 22, Pg. ID 339).) The Court, too, agrees that Plaintiff's allegations fail to show state action. While Plaintiff attempts to connect Defendant's actions to his role as prosecutor, the mere fact that Plaintiff contacted Defendant through public channels and because of his public role does not mean that the actions Defendant took were those of a prosecutor. Indeed, "[t]o create a state action, then, a State must do more than permit all parties (public and private alike) to engage in the conduct at issue. The State must instead entrust a party with state authority" to engage in that conduct. *Mackey*, 106 F.4th at 561 (quoting *Dean v. Byerley*, 354 F.3d 540, 553 (6th Cir. 2004)). Plaintiff does not allege that the state did that here for Defendant's actions. And, while Plaintiff lays out all three elements of a First Amendment retaliation claim in his Response, and argues that his claim meets all three, he fails to address the "controlling issue" in cases like this—that is, whether the adverse action was "state action." *See Hernden*, 2025 WL 2652993, at *5. Taken together with Plaintiff's own characterization of the actions as "personal," the Court finds that Plaintiff has failed to allege state action for purposes of his § 1983 retaliation claim. This claim must be dismissed.

### d. Qualified Immunity as a Defense to 42 U.S.C. § 1983 (Counts III and V)

Defendant next argues that, to the extent Plaintiff brings § 1983 claims against him in his individual capacity, and the alleged conduct was state action, qualified immunity bars these claims. (Motion, Doc. 20, Pg. ID 314; Reply, Doc. 24, Pg. ID 662.) Although the Complaint does not state that these claims are brought against Defendant in his personal

capacity, and Plaintiff does not state otherwise in his Response, the Court nonetheless considers this argument. "Qualified immunity protects government officials like . . . police officers from being liable for money damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) (cleaned up). For a right to be clearly established, the "constitutionality of the officer's conduct must have been beyond debate in the particular circumstances before him." *Id.* (cleaned up).

The Court, however, "must be mindful of the stage of the proceedings" when addressing qualified immunity as a defense. *Novak*, 932 F.3d at 426. While the Sixth Circuit highlights the importance of resolving "qualified immunity claims at the earliest possible point of litigation, we cannot resolve such claims when we need more factual development to do so." *Id.* Indeed, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (cleaned up). Instead, "it is preferable to resolve the threshold question of a government officer's entitlement to qualified immunity at summary judgment, not dismissal under Rule 12." *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025) (cleaned up). Though this preference is only a "general one, not an absolute one," a court should resolve the question of qualified immunity prior to discovery only if "plaintiffs present clearly insubstantial claims against government officials." *Freeman*, 667 F. Supp. 3d 636, 656 (S.D. Ohio 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020)) (cleaned up). As explained above, though, Plaintiff has presented "clearly insubstantial claims" regarding

17

his constitutional claims; indeed, his claims are not well-pled as he fails to present allegations of a prima facie case for any of them. As such, the Court finds that qualified immunity can serve as a bar of these claims at this stage. And, since Plaintiff has failed to allege that Defendant violated his clearly established rights, the Court agrees that qualified immunity bars these claims to the extent they are brought against Defendant in his individual capacity.

**e. Statutory Immunity as a Defense to Plaintiff's State Law Claims (Counts I, II, and VI)**

Defendant next argues that Ohio Revised Code § 2744.03(A)(6) entitles him to immunity against Plaintiff's state-law claims. (Motion, Doc. 20, Pg. ID 315.) The statute in question states, in relevant part, that the employee of a political subdivision facing claims to recover damages for injury, death, or loss to person or property is immune from liability unless one of these three exceptions applies: "(1) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) civil liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6). Defendant contends that he, as assistant prosecutor, was an employee of a political subdivision at the time of the alleged events and Plaintiff has failed to plead that any of these exceptions apply. (Motion, Doc. 20, Pg. ID 315.)

Plaintiff does not address this statutory immunity argument (*see generally* Response, Doc. 22), but the Court examines its merits regardless. To review, Plaintiff

18

brings three state-law claims: malicious prosecution for initiating the civil stalking protective order against Plaintiff (Count I), abuse of process for the civil stalking protective order (Count II), and abuse of process for the coroner's office incident (Count VI). (First Am. Compl., Doc. 5, ¶¶ 14-18, 25-26.) However, as Defendant argued previously in his Motion, and as the Court agreed, the civil stalking protective order and the coroner's office incident were *not* within the scope of Defendant's role as assistant prosecutor; they were personal actions. Accordingly, the Court finds that the first exception of § 2744.03(A)(6) applies: the employee's acts or omissions were manifestly outside the scope of his employment or official responsibilities. Defendant is not entitled to statutory immunity for these claims.

### f.  Malicious Prosecution Claim (Count I)

Nevertheless, Defendant argues that Plaintiff's malicious prosecution claim fails as a matter of law. (Motion, Doc. 20, Pg. ID 316.) A claim for malicious prosecution involving a civil prosecution, like a civil stalking protective order, requires four elements: "(1) malice institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause for filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings." *Robb v. Chagrin Lagoons Yacht Club*, 662 N.E.2d 9, 13 (Ohio 1996). As grounds for this argument, Defendant states that Plaintiff does not mention the civil stalking protective order in the factual allegations, but only briefly refers to it in his claims for relief. (Motion, Doc. 20, Pg. ID 316.) And, in referring to it, Plaintiff does little to plead facts showing all elements of the claim. (*Id.* at Pg. ID 317.) As Defendant argues, Plaintiff

19

merely makes "naked assertions devoid of further factual enhancement." (*Id.* (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).) In his Response, Plaintiff states that all three elements are met because the judge ultimately dismissed the civil stalking protective order, there was no probable cause, and malice can be inferred from the lack of probable cause and retaliatory motive. (Response, Doc. 22, Pg. ID 343-44.) However, as Defendant points out, Plaintiff fails to address the fourth element, seizure, at all. (Reply, Doc. 24, Pg. ID 665.) Indeed, the Court agrees that Plaintiff fails to address all elements in his malicious prosecution claim. And, for the elements he does address, he does little more than present a simple recitation of the elements. (*See* First Am. Compl., Doc. 5, ¶¶ 14-16.) Accordingly, he has failed to plead a malicious prosecution claim and dismissal is appropriate.

### g. Abuse of Process Claims (Counts II and VI)

Plaintiff pleads two claims for abuse of process under Ohio common law. (Am. Compl., Doc. 5, ¶¶ 17-18, 25-26.) The elements of this tort are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co., et al.*, 626 N.E.2d 115, 116 (Ohio 1994)). Plaintiff's claims attack Defendant for abuse of process related to the civil stalking protective order (Count II) and the incident in the Coroner's Office (Count VI). (First Am. Compl., Doc. 5, ¶¶ 17-18, 25-26.) Regarding the first claim, Defendant asserts that it fails for two reasons. (Motion, Doc. 20, Pg. ID 319.) First, Plaintiff contradicts the first element because, in his

20

malicious prosecution claim, he alleges that the civil stalking protective order was done without probable cause. (*Id.* (citing First Am. Compl., Doc. 5, ¶ 14).) Second, Plaintiff does not argue how the process was perverted to retaliate against him. (*Id.* at Pg. ID 319-20.)

In response, Plaintiff does not address his contradiction or shed light on the perversion directly. (Response, Doc. 22, Pg. ID 344.) Rather, he provides an incomplete recitation of the elements of the claim and states that Defendant set the legal process in motion to "harass, intimidate, and chill a Marsy's Law representative who was lawfully assisting a disabled victim-father and speaking on matters of public concern." (*Id.*) As Defendant points out in his Reply, though, this Response does little more than the Complaint to properly plead all elements of abuse of process. (Reply, Doc. 24, Pg. ID 666.) Indeed, examining Count II, the Court finds that, contradiction aside, Plaintiff does not plead facts that address all the elements of the claim; accordingly, he fails to adequately plead abuse of process and this claim must be dismissed.

Moving on to the second abuse of process claim, Defendant argues that the same contradiction issue applies, as Plaintiff pleads that Defendant lacked probable cause to direct the coroner to call the police. (Motion, Doc. 20, Pg. ID 320 (citing First Am. Compl., Doc. 5, ¶ 25).) Plaintiff's Response, once again, does not address the contradiction. As Defendant points out, accepting as true Plaintiff's allegations in the Complaint, Plaintiff blatantly states, under Count VI, that Defendant lacked probable cause. (*Id.*) Thus, as the Court views the allegations in a light most favorable to Plaintiff, it still finds that these allegations conflict with the first element of the abuse of process claim. On these grounds alone, the claim fails. Accordingly, both abuse of process claims must be dismissed.

### h. Marsy's Law Claims (Counts IV and VII)

Finally, Defendant argues for the dismissal of the Marsy's Law claims, Counts IV and VII. (Motion, Doc. 20, Pg. ID 320.) "The [Ohio] constitutional amendment known as Marsy's Law […] expands the right afforded to victims." *Brooks v. Werth*, No. 4:20-CV-38, 2020 WL 2615516, at *2 (N.D. Ohio May 22, 2020). Specifically, it gives victims the rights: (1) to fairness and respect; (2) to reasonable and timely notice of public proceedings involving the criminal offense; (3) to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole; (4) to reasonable protection from the accused; (5) to reasonable notice of any release or escape of the accused; (6) to refuse an interview, deposition, or other discovery request made by the accused; (8) to proceedings free from unreasonable delay; (9) to confer with the attorney for the government; and (10) to be informed, in writing, of all these rights. Ohio Const., art. I, § 10(A)(1)-(10). The victim, that is, the one against whom the criminal offense is committed, the victim's lawful representative, or the government attorney upon request for the victim, may assert these rights in any proceeding involving the criminal offense. Ohio Const., art. I, § 10(B). Importantly, if the relief sought is denied, the law provides that the victim or victim's representative can petition the court of appeals for the applicable district for redress. *Id.*

In addition to these provisions, Defendant points out that the Ohio legislature passed a law governing standing for victims. (Motion, Doc. 20, Pg. ID 321.) Specifically, Ohio Revised Code § 2930.19(C) states:

22

> The failure of a public official or public agency or the public official's or public agency's designee to comply with the requirements of this chapter does not give rise to a claim for damages against that public official or public agency or that public official's or public agency's designee, except that a public agency as an employer may be held responsible for a violation of section 2930.18 of the Revised Code.

Ohio Rev. Code § 2930.19(C). To this point, Defendant notes that Ohio courts have applied this statute when dismissing claims related to victim standing. (Motion, Doc. 20, Pg. ID 322 (citing *Lewis v. Off. of the Prosecuting Atty. of Columbiana Cnty.*, No. 05 CO 69, 2006 WL 2590561, at *2 (Ohio App. Ct. Sept. 5, 2006)).) Indeed, the court in *Lewis* found that "liability cannot arise from any failures regarding these statutory obligations" of Marsy's Law. 2006 WL 2590561, at *2. To this end, Defendant argues that Plaintiff does not have standing to bring a claim against Defendant for a violation of Marsy's Law. (Motion, Doc. 20, Pg. ID 322.) The Court agrees. Ohio law is quite clear that no private right of action arises under this constitutional amendment. *See* Ohio Rev. Code § 2930.19(C); *Lewis*, 2006 WL 2590561. And, to the extent that Plaintiff would like to petition the government for redress regarding an alleged violation of the law, the Ohio court of appeals in the applicable district is the proper forum for such petition, not this Court. *See* Ohio Const., art. I, § 10(B). As Plaintiff does not address this argument in his Response, the Court sees no need to further analyze the issue. The Marsy's Law claims must be dismissed.

*    *    *

One final matter remains for the Court's attention. At the end of his Response, Plaintiff asks that the Court order discovery of 334 withheld emails regarding

23

Defendant's conduct, along with all pre-2021 prosecutor records about Pitzer, and recordings where the current prosecutor, Shidaker, admits there is a "slew of probable cause" in regards to Pitzer's case. (Response, Doc. 22, Pg. ID 344-45.) As Defendant writes in his Reply, this section of the Response "seems to be asking the Court to compel the Clinton County Prosecutor's Office to produce certain emails and parts of an investigatory file." (Reply, Doc. 24, Pg. ID 667.) However, as Defendant aptly points out, the Clinton County Prosecutor's Office is not a named defendant in this matter; nor is discovery warranted where no claims remain in this case. (*Id.*) Rather, Defendant is correct that other avenues exist for Plaintiff's requests, like a public records action in state court. *See* Ohio Rev. Code § 149.43(C)(1)(a)-(b).

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1.  Plaintiff's Motion for Leave to File Sur-Reply (Doc. 27) is **DENIED AS MOOT**;

2.  Plaintiff's Amended Motion for Leave to File Sur-Reply (Doc. 28) is **DENIED**;

3.  Defendant's Motion to Dismiss (Doc. 20) is **GRANTED**;

4.  Plaintiff's First Amended Complaint (Doc. 5) is **DISMISSED WITH PREJUDICE**; and

5.  This matter is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

24